IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RSS UBSCM 2017-C4-IL FDG, LLC, a Delaware limited liability company, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>400 TOWNLINE, LLC, an Illinois limited liability company; 600 RAND RD, LLC, an Illinois limited liability company; ADI MOR, an individual; Unknown Owners; and Non-Record Claimants, )<br>)<br>Defendants. ) | Case No. 19-cv-6448, consolidated with Case No. 19-cv-6609<br><br>Judge Sharon Johnson Coleman |
| 400 TOWNLINE, LLC and 600 RAND RD, LLC, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>WILMINGTON TRUST, NATIONAL ASSOCIATION, as Trustee for holders of UBS Commercial Mortgage Securitization Trust 2017-C4, Commercial Mortgage Pass-Through Certificates, Series 2017 C-4; as successor in interest to Ladder Capital Finance, LLC, )<br>)<br>Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

On August 28, 2019, Plaintiffs, 400 Townline, LLC ("400 Townline") and 600 Rand Rd, LLC ("600 Rand," and together with 400 Townline, "Borrowers"), filed a complaint for declaratory judgment and other relief against Wilmington Trust, National Association in the Circuit Court of Cook County. On September 27, 2019, RSS UBSCM 2017-C4-IL FDG, LLC ("RSS"), successor in interest to Wilmington Trust, separately filed a complaint for mortgage foreclosure and other relief against 400 Townline, 600 Rand, and Adi Mor, and Unknown Owners and Unknown and Non-

Record Claimants. On October 4, 2019, RSS removed Borrowers' case to federal court and moved to consolidate the cases on October 22, 2019. This Court granted that order on October 25, 2019. On November 1, 2019, RSS moved to dismiss Borrowers' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 24.) For the reasons outlined below, the Court grants RSS's motion to dismiss.

**Background**

400 Townline is an Illinois limited liability company that owns and manages commercial real estate located at 400 Townline Road, Mundelein, Illinois. 600 Rand is an Illinois limited liability company that owns and manages commercial real estate located at 600 Rand Road, Arlington Heights, Illinois. RSS is the successor in interest to Wilmington Trust, National Association ("Wilmington Trust"), which is a national banking association that serves as trustee for holders of UBS Commercial Mortgage Securitization Trust 2017-C4, Commercial Mortgage Pass-Through Certificates, Series 2017-C4. Wilmington Trust was the successor in interest to Ladder Capital Finance, LLC.

In September 2017, Borrowers entered into a Loan Agreement with Ladder Capital[1] in the original principal amount of $12,900,130.00. Ladder Capital then assigned the loan to Wilmington Trust. Borrowers allege that within a month of closing, Ladder Capital and/or Wilmington Trust began a "concerted campaign to impose excessive fees, charges and other unnecessary obligations on Borrowers."

Borrowers allege that in October 2017, the lender exercised its discretion to declare an event of default pertaining to alleged issues with the parking lot at one of the real estate parcels. The lender then retained more than $111,000 of Borrowers' funds for work allegedly needed for the parking lot. Borrowers allege that the work that the lender wanted performed on the parking lot

---

[1] The Court shall refer interchangeably to Ladder Capital and its successors in interest as the lender.

could not be completed in winter because of the weather. Borrowers caused that work to be done in Spring 2018, when the weather changed. They allege that Defendant continued to exercise its discretion thereafter to declare events of default even though Borrowers continued to make timely payments.

Borrowers allege that the lender required that they provide financial statements, reviewed quarterly by a certified public accountant. Borrowers allege, however, that the lender prevented Borrowers from complying with this request by not providing statements pertaining to the loan, which was the principal liability of each of the lenders and necessary information to create financial statements. When Borrowers were not able to provide financial statements, the lender maintained the Borrowers were in default.

Borrowers additionally allege that the lender has asserted dominion and control over Borrowers funds without proper basis, allocated those funds to payment of unreasonable and inappropriate servicing fees, legal fees and other charges.

Borrowers also allege that they have asked Defendant to release an outparcel on one of parcels of real property from the mortgage to allow it to be sold. They allege that Defendant has exercised its discretion to refuse to release this ourparcel from the mortgage without justification and with the intent to harm Borrowers.

**Legal Standard**

When considering a Rule 12(b)(6) motion, the Court accepts all of the plaintiff's allegations as true and views them "in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). When ruling on a motion to dismiss, the Court may consider documents attached to the complaint, like the loan agreement attached here. *See Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017).

**Discussion**

*Rule 9(b)*

RSS first argues that the breach of contract and breach of fiduciary duty claims should both be dismissed because they sound in fraud and should thus be pleaded with particularity. Because the complaint does not meet Federal Rule of Civil Procedure Rule 9(b) pleading standards, RSS argues, it should be dismissed. Although claims for breach of contract and breach of fiduciary duty are not by definition fraudulent torts, Rule 9(b) requires that all averments of fraud be plead with particularity, not just claims of fraud. *See Borsellino v. Goldman* Sachs Grp., Inc., 477 F.3d 502, 507 (7th Cir. 2007). Whether Rule 9(b) applies, therefore, will depend on the factual allegations in the complaint and whether they sound in fraud. *Id.* If the allegations are based on a course of fraudulent conduct, they sound is fraud. *Id.*

For example, in *Ferenc v. Brenner*, 927 F. Supp. 2d 537, 548 (N.D. Ill. 2013) (Grady, J.), the case RSS relies on, the court found that the complaint sounded in fraud when it included multiple allegations of deceit and was buttressed by other plaintiffs' RICO fraud claims being based on the losses alleged in the complaint. Here, the complaint does not directly reference fraud or deceit. It alleges that the lender acted "without justification" and abused its discretion, but not much more. Accordingly, because the claims do not sound in fraud, Rule 9(b)'s heightened pleading requirements do not apply.

*Choice of Law*

The Court notes that the loan agreement, at § 11.3, contains a "Governing Law" provision, which states that New York law shall govern in all matters concerning "construction, validity, and

4

performance" of the agreement. Under Illinois choice-of-law rules, which we apply as a federal court sitting in diversity, a court must honor a contractual choice of law unless it would violate fundamental Illinois public policy, Illinois has a materially greater interest in the litigation than the chosen state, or if the legality of contract is in question. *See Life Plans, Inc. v. Sec. Life of Denver Ins. Co.,* 800 F.3d 343, 357 (7th Cir. 2015). Those concerns are not present here. As such, the court will honor the parties' contractual choice to apply New York law.

*Breach of Contract*

RSS argues that the breach of contract claim should be dismissed because it is based on the alleged breach of the implied covenant of good faith and fair dealing, but does not allege that RSS has discretion with respect to the defaults. Where an agreement contemplates an exercise of discretion, the implied covenant of good faith and fair dealing includes a promise to exercise that discretion in good faith, not arbitrarily. *See Scheer v. Elam Sand & Gravel Corp.*, 177 A.D.3d 1290, 1291, 112 N.Y.S.3d 397, 398 (2019). The implied covenant of good faith and fair dealing is not without limits, however, and no obligation can be implied that would be inconsistent with other terms of the contractual relationship. *See Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, 663 N.E.2d 289, 292 (1995).

Borrowers allege that the loan agreement gives discretion to the lender with regard to whether a default has occurred. They further allege that the lender exercised its discretion under the loan agreement in violation of its implied duty of good faith and fair dealing. RSS argues there was no actual discretion in the agreement when it came to a default for failure to make repairs to the parking lot or for failing to prepare financial statements. The loan agreement clearly sets out events of default in § 10.1 and does not leave them to the discretion of the lender. The loan agreement also clearly sets out the procedure for the required repairs fund in § 6.2, which includes the lender being able to refuse to release the funds if certain conditions are not met. Borrowers have not alleged

whether RSS breached this provision, simply that it breached its duty of good faith and fair dealing by refusing to release the funds. Borrowers have not alleged how RSS's management of the funds went beyond what was contemplated by the express terms of the contract. Because the agreements covers the events of default enumerated in the complaint and the procedure for releasing the funds in question, the covenant of good faith and fair dealing does not also cover them—doing so could lead to contradicting explicit terms of the contract.

Borrowers allege that the lender breached its covenant of good faith and fair dealing when it refused to allow Borrowers to sell the outparcel. In § 2.5(a), the agreement makes clear that Borrowers shall have a right to sell the outparcel upon satisfaction of certain conditions precedent, including "no Event of Default shall have occurred and be continuing." Because Borrowers allege that the lender considered them to be in default, refusing to release the outparcel is contemplated by the contract. Thus, that decision is not additionally covered by the covenant of good faith and fair dealing.

Borrowers have not alleged any facts regarding defaults, management of funds, or the failure to release the outparcel that are not explicitly covered by the contract. Their breach of contract claim, which is based on the covenant of good faith and fair dealing, is therefore dismissed.

*Fiduciary Duty*

Finally, RSS argues that the breach of fiduciary duty claim should be dismissed because the complaint does not allege that a fiduciary duty existed or that an alleged duty was breached. Borrowers allege that a fiduciary duty existed because "Defendant has since possessed and exercised dominion and control over Plaintiffs' funds." The funds referenced in the complaint are those required for the repair of the parking lot.

A fiduciary relationship is one founded upon trust or confidence given by one person to another. *See AHA Sales, Inc. v. Creative Bath Prod., Inc.*, 58 A.D.3d 6, 21, 867 N.Y.S.2d 169, 181

(2008). "It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *Id.* (quoting *Penato v. George*, 52 A.D.2d 939, 942, 383 N.Y.S.2d 900, 905 (1976)). Borrowers must show special circumstances that could have transformed the parties' business relationship to a fiduciary one such as control by one party of the other for the good of the other. *See Magarian & Co. v. Timberland Co.*, 245 A.D.2d 69, 70, 665 N.Y.S.2d 413, 414 (1997).

Borrowers have not alleged that here. They allege that the fiduciary relationship existed because the lender retained control over the repair funds, but that control was covered by the loan agreement. *See Celle v. Barclays Bank P.L.C.*, 48 A.D.3d 301, 302, 851 N.Y.S.2d 500, 501 (2008) (affirming dismissal of a fiduciary duty claim where the agreement "cover[s] the precise subject matter of the alleged fiduciary duty"). Borrowers argue additional facts to support this theory in their reply brief, but the Court will only consider the facts alleged in the complaint. Furthermore, even if Borrowers have alleged a fiduciary relationship, they have not alleged a breach. They allege that the lender retaining control of the funds was a breach of a fiduciary duty, but that does not square with the loan agreement which outlines when the funds should be disbursed and retained. Throughout the complaint, Borrowers allege that the lender used the money to cover various fines and fees, but does not allege whether those were fees already contemplated by the loan agreement. If Borrowers rely on additional facts to buttress their allegations, they have not included them in the complaint. Without more, the Court dismisses Borrowers' breach of fiduciary duty claim.

7

**Conclusion**

For the foregoing reasons, the Court grants RSS's motion to dismiss [24] without prejudice. Because this ruling has no impact on RSS's complaint in the consolidated case, the case remains open.

IT IS SO ORDERED.

DATE: 11/6/2020

_____
SHARON JOHNSON COLEMAN
United States District Judge